UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
BALBIR SINGH,                       )
                                    )
        Plaintiff,                 )
                                    )
                                    )
        v.                         )    Civil Action No.: 05-11671-GAO
                                    )
                                    )
MGI PHARMA, INC., and               )
MGI PHARMA BIOLOGICS, f/k/a         )
ZYCOS, INC.                         )
        Defendants.                )
_____)

## PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
## COUNTS IV AND V OF THE COMPLAINT

The plaintiff, Dr. Balbir Singh ("Dr. Singh"), hereby opposes the Motion of defendant MGI Pharma Biologics to dismiss Counts IV and V of Dr. Singh's Complaint.

### FACTUAL BACKGROUND AND PROCEDURAL POSTURE

The factual allegations supporting Dr. Singh's claims are set forth in detail in his Complaint. In summary, Dr. Singh was engaged by defendant Zycos, Inc. ("Zycos"), the predecessor to MGI Pharma Biologics ("Pharma Biologics"), to assist Zycos' management and to serve as a critical member of the Zycos team attempting to keep the company afloat and to position and market the company for potential acquisition – a process that culminated in the $50 million acquisition of the company by defendant MGI Pharma, Inc. ("MGI Pharma").

Dr. Singh has brought claims for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of implied contract, unjust enrichment,

and unfair and deceptive trade practices. The partial motion to dismiss interposed by Pharma Biologics (in which MGI Pharma has joined) ("Motion") argues that because Counts IV (breach of contract implied in fact) and V (unjust enrichment) of the Complaint "presuppose the absence of a written agreement between the parties," those counts are subject to dismissal under the so-called "business broker's statute of frauds," Mass. Gen. L. 259, section 7. See Memorandum of Law in Support of Motion to Dismiss ("Memorandum"), Page 1.

Although the Motion is targeted at only two counts of a six-count Complaint, neither defendant has filed an answer to the Complaint.

## ARGUMENT

### I. Legal Standard.

In ruling upon a 12(b)(6) motion, the Court must accept all well-pleaded facts alleged in the Complaint as true and draw all reasonable inferences in favor of the plaintiff. Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971 (1st Cir. 1993). "[The] Court neither weighs the evidence nor rules on the merits because the issue is not whether plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims." Day v. Fallon Community Health Plan, Inc., 917 F.Supp. 72, 75 (D.Mass.1996). If the allegations in the Complaint are sufficient to state a cause of action in accordance with the law under any theory, the Court must deny the motion to dismiss. Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir. 1994).

> **II.     The Motion to Dismiss Must Be Denied As It Fails to Establish An Absence of Facts Upon Which Dr. Singh Might Recover In *Quantum Meruit*.**

Defendants' argument for partial dismissal boils down to this: Because *some* of the services provided by Dr. Singh to Zycos *may* fall within the ambit of the broker's statute of frauds, he should be barred – even at this early stage of the case – from seeking *quantum meruit* recovery for *any* of the myriad services he provided. This argument fails for many reasons, as detailed below.

> A.     Dr. Singh's Pleading of Alternative *Quantum Meruit* Counts Is Entirely Proper.

The Motion is targeted to only a very narrow portion of Dr. Singh's Complaint and therefore concedes that there are no grounds for seeking dismissal of the remaining counts, including the claim for breach of written contract.

Counts IV and V are alternative counts to Dr. Singh's claims based on the written contract between himself and Defendants, and in essence seek recovery in *quantum meruit* for the valuable services Dr. Singh provided to Zycos. As an initial matter, such alternative pleading is entirely proper. That is, in the unlikely event that Dr. Singh somehow cannot recover for some or all of the services he provided under the written contract, he is entitled to compensation for services rendered under theories of, without limitation, unjust enrichment and implied contract. See, e.g., Uncle Henry's Inc. v. Plaut Consulting Co., Inc., 399 F.3d 33, 47 (1st Cir. 2005) ("a viable *quantum meruit* claim can co-exist with an express contract"); Bushkin Associates, Inc. v. Raytheon Co., 815 F.2d 142, 149 (1st Cir. 1987) (plaintiffs "were certainly entitled to plead in the alternative, arguing a *quantum meruit* theory as well as an express contract theory").

3

B.  **Defendants Have Failed to Make a Serious Argument That *All* of the Services Provided by Dr. Singh To Zycos Fall Within the Ambit of the Statute.**

Section 7 of Chapter 259 establishes that an agreement to compensate someone for acting as "a broker or finder or for service rendered. . . in negotiating the purchase, sale or exchange of a business" must be in writing. Hence, the question raised by the Motion is this: Do all of the services provided by Dr. Singh to Zycos, as a matter of law, fall within the language of the statute, such that Dr. Singh is barred from recovering in *quantum meruit* for any of those services?

The answer to this question is unequivocally "no." Indeed, the Motion manifestly fails to establish that all (if any) of the services provided by Dr. Singh fall within the statutory scheme.

As an initial matter, the Complaint does not allege that Dr. Singh is entitled to compensation because he brought in MGI Pharma as a potential purchaser. See, e.g., Complaint, ¶ 54. As such, his role in the transaction is not the type of "finder" or "broker" role that the broker's statute is directed towards – as long as a transaction was consummated, Dr. Singh was to be paid his success fee, regardless of who "found" the acquirer.

Indeed, it is clear from the Complaint that Dr. Singh's role was significantly broader, making the cases cited in Pharma Biologics' Memorandum inapposite. In two of those cases, the issue of whether the plaintiff's services were *in toto* covered by the broker's statute was not even in question, making those opinions utterly irrelevant here.

For example, in Schwartz v. Inductotherm Industries, Inc., 1993 WL 818579, * 3 (Mass. Super. 1993), it was *undisputed* that the plaintiff was a broker within the meaning

4

of the statute. And in <u>Christo v. Draper</u>, 55 Mass. App. Ct. 1108 (2002), the plaintiff was openly seeking compensation for services provided as a "finder." In both of those cases, the dispositive issue before the court was not whether the broker's statute applied, but whether a sufficient writing was present to overcome the statute.

Here, the Complaint establishes through considerable detail that Dr. Singh played numerous critical roles in allowing the very survival of Zycos during the precarious period when the company was seeking an acquirer. As detailed in the Complaint, the company's own promotional materials extolled Dr. Singh and held him out to the investment community not simply as a "broker," "finder," or "negotiator," but as a key member of the Zycos inner circle with an eclectic portfolio.

The summary of Dr. Singh's allegations that Pharma Biologics offers on pages 2-3 of its Memorandum is highly partial and selective, and fails to take as true – as is required on a motion dismiss – *all* of Dr. Singh's allegations. For example, the Memorandum omits mention of the following services provided by Dr. Singh:

- Dr. Singh "serve[d] as a critical member of the Zycos team attempting to keep the company afloat" (<u>Complaint</u>, Introduction);

- Dr. Singh's role included "attracting investment and bridge financing" (<u>Complaint</u>, ¶31);

- Dr. Singh provided general business consulting services including, without limitation, a key recommendation that resulted in Dr. Mark Philip being retained as chairman of Zycos instead of being removed outright (<u>Complaint</u>, ¶¶37-40);

- Zycos traded on Dr. Singh's reputation by "highlighting the addition of Dr. Singh to the Zycos team in the company's marketing communications with potential acquirers" (<u>Complaint</u>, ¶45);

- Dr. Singh was presented to the investment community and the world at large not just as a participant in the search for an acquirer, but "as one of three 'key management' team members of Zycos" (<u>Complaint</u>, ¶46); and

- "As a result of the presentations in which Dr. Singh's name was featured prominently and in which he played an active and key role, $1.9 million in bridge financing was extended to Zycos. . ." (Complaint, ¶51).

The broker's statute, even in its comprehensive definition of the term "negotiation," contains no indication whatsoever that any of these types of services are within the statute's ambit. Providing general business advice, attracting financing, and having one's prominent reputation used to enhance the stature and status of a company – such services are found nowhere in the definition of "negotiation."[1] And such services obviously extend far beyond those provided by an individual whose role is limited to that of a "broker" or "finder."

Pharma Biologics, by omitting mention of these services from its Motion and Memorandum, has failed to mount a serious argument that Dr. Singh should be barred from seeking *quantum meruit* recovery for the work he performed. To argue, for example, that an individual who plays a key role in attracting financing to a company – as Dr. Singh clearly did for Zycos – is acting only as a "broker" or "finder" within the meaning of the statute would be to expand the language of the statute beyond any reasonable scope.

Here again, the authority cited in Pharma Biologics' Memorandum is not on point. For example, in State Tax Auditing & Research v. Waters Corp., 11 Mass. L. Rptr. 560, * 3 (Mass. Super. 2000), the court found that a "finder" within the meaning of the statute is one who identifies a business opportunity. Dr. Singh's role, as described in the Complaint, obviously went far beyond this – critically, his compensation was in no

---

[1] The statute states that "'negotiating' shall include identifying prospective parties, providing information concerning prospective parties, procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction."

6

respect dependent upon him "finding" anyone or anything.  He was brought aboard as a critical member of the Zycos management team, and was to receive his incentive bonus if Zycos were acquired – regardless of who "found" the acquirer.

As can be expected, the Motion tries to seize on aspects of Dr. Singh's portfolio that have some colorable relationship to the broker's statute of frauds, such as his participation in the development of negotiating strategies.  However, given that, as discussed above, such a considerable portion of Dr. Singh's duties fall outside of the statute, dismissal cannot be proper.  This is particularly so given that even some of Dr. Singh's activities as cited by Pharma Biologics – for example, that his duties included "positioning the company in the marketplace so it would be attractive to potential acquirers" (<u>Memorandum</u>, Page 2, quoting ¶ 31 of the Complaint) – are clearly outside of the statute's scope.

Regardless of how artfully Defendants might attempt to spin Dr. Singh's duties so they fall within a penumbra of the broker's statute, the bottom line is that his role went far beyond that of a broker, finder, or negotiator – he performed a varied portfolio of duties that were in the end critical to the very survival of Zycos.

In sum, in attempting to argue that all of Dr. Singh's services are covered by the broker's statute of frauds, Defendants have undertaken a selective and partial reading of a Complaint that provides ample detail about a much wider mosaic of activities undertaken by Dr. Singh on Zycos' behalf.  It is boilerplate law, of course, that a motion to dismiss must take as true *all* of the factual allegations of the Complaint.  Contrary to this rule, the Motion simply takes *some* of the allegations as true and ignores the rest.  As such, it must be denied.

### C. Even If *Some* of the Services Provided by Dr. Singh Are Found At Trial to Fall Within the Statute, This Is An Insufficient Ground for Granting a Partial Motion to Dismiss.

The procedural posture in which Pharma Biologics' Motion is brought offers another compelling reason for denying the Motion. Determining as a matter of law, on a motion to dismiss, that any of Dr. Singh's duties fall within the statute would be premature and would require the Court to engage in the weighing of evidence.

Dr. Singh certainly does not concede, either for purposes of this motion or generally, that *any* of the services he provided as a matter of law fall within the statute. Indeed, because his compensation was not dependent upon him bringing in Zycos' acquirer, his role and activities were, as detailed above, much broader than those addressed by the broker's statute.

But even assuming *arguendo* that some of the services he provided could, at trial, be found to fall within the broker's statute of frauds, it is nonetheless inappropriate for the Court to rule, before any factual record has been developed, that such services are as a matter of law embraced by the statute. For the Court to so rule in the present procedural posture would be premature. See Nuchols v. Berrong, 141 Fed.Appx. 451, 453 (6th Cir. 2005) ("dismissal was premature with regard to this theory of relief"); Pennsylvania Psychiatric Soc. v. Green Spring Health Services, Inc., 280 F.3d 278, 281 (3rd Cir. 2002) ("[w]e believe the District Court's dismissal under Fed.R.Civ.P. 12(b)(6) was premature").

Notably, Defendants have cited no case where a court determined, in a 12(b)(6) posture, that dismissal was proper because a plaintiff's duties as a matter of law were covered by the broker's statute. In both Cantell v. Hill Holliday Connors, 55 Mass. App.

8

Ct. 550 (2002) and State Tax Auditing – the two opinions cited by Pharma Biologics where courts addressed whether certain activities were covered by the statute – the courts had the benefit of a full summary judgment record.

Further, if the Court were to attempt, at this early stage of the case, to analyze whether *some* of the services provided by Dr. Singh are covered by the statute, this would quickly take the Court down the road toward the weighing of evidence, rather than simply taking the allegations of the Complaint as true.  See Duncan v. Santaniello, 900 F.Supp. 547, 553 (D.Mass. 1995) ("[t]he Court's function on a Rule 12(b)(6) motion is not to weigh the evidence which might be presented at trial but merely to determine whether the complaint itself is legally sufficient").  Moreover, this analysis would be burdensome and uneconomical for the Court.  In sum, the Court would be forced to make a detailed parsing of the allegations of the Complaint in order to determine which services provided by Dr. Singh might fall within the statute, and which do not.[2]

In short, the Motion is misplaced for a variety of reasons.  In contending that all of the services provided by Dr. Singh are covered by the broker's statute of frauds, the Motion completely misses the mark and is facially insufficient in that it fails to account for a great many of the services which Dr. Singh provided.  Second, to the extent Defendants' assertion is that *some* of the services provided by Dr. Singh fall within the statute, all that argument does is to leave the court with the premature, unnecessary, and burdensome task of parsing the Complaint – an exercise which will not materially alter the scope of discovery or the extent of Dr. Singh's damages.

---

[2] Parsing the Complaint would accomplish little or nothing in the way of narrowing the case or paring down the factual matters at issue. Even if the Court were to find that Dr. Singh could not seek recovery for *some* of those services under an implied contract/unjust enrichment theory, *all* of the factual allegations in the Complaint would remain part of the case with respect to the contract claims.

## CONCLUSION

The plaintiff, Dr. Balbir Singh, requests that the Motion of Defendant MGI Pharma Biologics to dismiss Counts IV and V of Dr. Singh's Complaint be DENIED.

>Respectfully submitted,
>
>BALBIR SINGH
>By his attorneys,
>
>/s/ C. Alex Hahn
>Anthony A. Scibelli (BBO #556507)
>Joseph L. Stanganelli (BBO #628958)
>C. Alex Hahn (BBO # 634133)
>Scibelli, Whiteley and Stanganelli, LLP
>50 Federal Street, 5th Floor
>Boston, MA 02110
>(617) 227-5725

Dated: November 3, 2005