IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BALBIR SINGH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05 1167 1 GAO |
| ) | |
| MGI PHARMA, INC., and ) | |
| MGI PHARMA BIOLOGICS, f/k/a, ) | |
| ZYCOS, INC., ) | |
| ) | |
| Defendants. ) | |

RECEIVED
Clerk's Office
USDC, Mass.
Date 11/14/05
By M.P.
Deputy Clerk

## DEFENDANT MGI PHARMA BIOLOGICS INC.'S MOTION FOR LEAVE TO REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT MGI PHARMA BIOLOGICS' MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 7(b) and Local Rule 7.1(B), Defendant MGI Pharma Biologics, Inc. ("Pharma Biologics), by and through its counsel, hereby requests leave to file a reply to Plaintiff's opposition to Pharma Biologics' motion to dismiss. (A copy of the proposed *MGI Pharma Biologics Inc.'s Reply in Support of Its Motion to Dismiss Counts IV and V of Plaintiff's Complaint* is attached hereto.) As good cause, Pharma Biologics states that: (1) Plaintiff's opposition misconstrues the law regarding the Massachusetts Statute of Frauds; and (2) Plaintiff's opposition misstates and mischaracterizes facts and arguments.

Dated this 14th day of November 2005.

Respectfully submitted,

MGI Pharma Biologics, Inc.

By: _____
One of Its Attorneys

Donald R. Pinto
RACKEMANN SAWYER & BREWSTER
One Financial Center
Boston, MA 02111
Tel: 617-951-1118
Fax: 617-542-7437

Andrew R. McGaan, P.C.
Jamenda A. McCoy
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL 60601
Tel: 312-861-2000
Fax: 312-861-2200

*Counsel for Defendant*
*MGI Pharma Biologics, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this date I served a true copy of the foregoing document on the attorney of record for each other party by mail.

_____
Donald R. Pinto, Jr.

Dated: November 14, 2005

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BALBIR SINGH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05 1167 1 GAO |
| ) | |
| MGI PHARMA, INC., and ) | |
| MGI PHARMA BIOLOGICS, f/k/a, ) | |
| ZYCOS, INC., ) | |
| ) | |
| Defendants. ) | |

### MGI PHARMA BIOLOGICS INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COUNTS IV AND V OF PLAINTIFF'S COMPLAINT

This motion to dismiss comes with the benefit of a lengthy speaking complaint wherein Plaintiff details his understanding of the contractual relationship between himself and Zycos, Inc. ("Zycos"). *See* Pl.'s Compl. (hereinafter "Pl.'s Compl." or "Complaint"). Thus, Plaintiff's allegations, such as the one that follows, are to be taken on their face:

> [i]t was also the clear understanding of [Plaintiff] and the Investor Representatives that the incentive bonus [Plaintiff] would receive – in the event Zycos were acquired – would be in consideration of the overall services he had provided throughout the process and the value his presence on the Zycos team had brought to the search for an acquirer.

(Compl. ¶ 34).

This allegation, along with a host of others found in Plaintiff's Complaint, establishes that he is seeking to be paid an incentive bonus for his role in assisting in the sale of Zycos. In its *Motion to Dismiss Counts IV and V of Plaintiff's Complaint* ("Motion"), MGI Pharma Biologics, Inc. ("Pharma Biologics") maintained that because the face of Plaintiff's Complaint clearly establishes Plaintiff as a broker or finder under the Massachusetts General Laws, Chapter

259, Section 7 (hereinafter "259 § 7"), his theories of implied-in-fact contract and unjust enrichment are barred (because they presuppose the absence of a written agreement).

Plaintiff's Response to Pharma Biologics' Motion completely misconstrues and misstates both the arguments contained in the Motion and the law upon which it is based, namely, 259 § 7. By attempting to turn this Motion into a fencing match about the day-to-day tasks Plaintiff may have engaged in, rather than the overall services he was contracted to provide, Plaintiff evidences his flawed interpretation of both the letter and spirit of 259 § 7. Indeed, as this reply will show, Plaintiff's Complaint is riddled with allegations that support the conclusion that his were precisely the types of services to which 259 § 7 was intended to apply.[1]

Notably, Plaintiff's Response does not cite to a single case (in support of his position) where 259 § 7 was even mentioned, much less at issue. In fact, in support of one of his arguments, Plaintiff cited a case, which predated 259 § 7, and that a Massachusetts court has already held would not have had the same outcome had it been decided after the statute was enacted. *Schwartz v. Inductotherm Industries, Inc.*, 1993 WL 818579 at *3 (Mass. Super. 1993) (referencing *Bushkin Associates, Inc. v. Raytheon Co.*, 815 F.2d 142 (1st Cir. 1987)).

For these reasons, those articulated in Pharma Biologics' Motion, and those stated below, Counts IV and V of Plaintiff's Complaint should be dismissed.

---

[1] The Massachusetts Statute of Frauds provides, in pertinent part, that "[a]ny agreement to pay compensation for service as a broker or finder or for service rendered in negotiating a loan or in negotiating the purchase, sale or exchange of a business . . . shall be unenforceable unless such agreement is in writing, signed by the party to be charged therewith, or by some other person authorized. . . ." Mass. Gen. Laws ch. 259, § 7.

2

**ARGUMENT**

I.   **THE SERVICES PLAINTIFF CONTRACTED TO PROVIDE ARE PRECISELY THOSE TO WHICH 259 § 7 WAS INTENDED TO APPLY**

In his Response, by suggesting that *all* of the "numerous" services that he provided must fall "within the statutory scheme," Plaintiff utterly misstates the law with respect to the inquiry as to whether one is considered a "broker" or "finder" under 259 § 7. Pl.'s Resp. 4. Massachusetts courts have continued to reiterate that 259 § 7, and the terms therein, should be broadly, rather than narrowly, construed. *See, e.g., Cantell v. Hill Holliday Connors Cosmopulos*, 772 N.E.2d 1078, 1081 (Mass.App.Ct. 2002) ("The modern trend is to give statutes of frauds liberal interpretation. . . . We have followed this trend previously in concluding that the precise section at issue, G.L. c. 259, § 7, should be interpreted broadly to further its policy determination that agreements for compensation for certain services be in writing[]"); *State Tax Auditing & Research, Inc. v. Waters Corporation*, 2000 WL 782948 *3 (Mass.Super. 2000) (same). Moreover, courts have refused to interpret the words "broker," "finder" or "service" in such a way that would render 259 § 7 meaningless. *Stavaridis v. Dynamic Machine Works, Inc.*, 1994 WL 879484 at *3 (Mass. Super. 1994). Thus, in deciding whether 259 § 7 applies, the law does not concern itself with the business title afforded to the service provider or the day-to-day work that he may have done. Rather, the emphasis is on whether the relationship, as per the contract, between the parties was such that payment of a commission was dependent upon a transaction involving a loan to or from, and/or the purchase, sale or exchange of, a business. *See, e.g., Stavaridis*, 1994 WL 879484 at *1, 3 (holding that plaintiff, who assisted in submitting defendant's bid to acquire a government contract and had met with defendant's officers and directors on occasion to propose and analyze several other bids, was a "broker or finder" under 259 § 7); *North East Technical Sales, Inc. v. Barshard*, 2000 WL 1252184 * 1 (Mass. Super.

2000) (*granting defendant's motion to dismiss* based on the applicability of 259 § 7 to plaintiff-sales representative, who took sales orders and worked to secure accounts with other businesses on defendant's behalf).

Here, according to Plaintiff's own allegations, payment of any incentive bonus was triggered by the consummation of a major transaction for the sale of Zycos. Put another way, by Plaintiff's own admission, but for the sale of Zycos, he would not have been entitled to a single penny of an incentive bonus. Indeed, every allegation on the face of Plaintiff's Complaint that mentions his alleged entitlement to an incentive bonus acknowledges that payment of the bonus was directly tied to the sale of Zycos:

- Under an agreement between Dr. Singh and Zycos, under the clear understanding of the parties, and consistent with the prior course of dealing between the parties, Dr. Singh was entitled to receive both a monthly fee for consulting services and – *in the event Zycos were acquired by a major pharmaceutical company* – an incentive bonus. (Compl. Introduction) (emphasis added).

- It was also the clear understanding of Dr. Singh and the Investor Representatives that *the incentive bonus Dr. Singh would receive – in the event Zycos were acquired –* would be in consideration of the overall services he had provided throughout the process and the value his presence on the Zycos team had brought to the search for an acquirer. (Compl. ¶ 34) (emphasis added).

- Dr. Singh's understanding was the basic structure of a deal was then in place, and that he would be compensated in accordance with the same basic structure as had been established through the 2003 Agreement *in the event Zycos were acquired* (that is, through monthly consulting fees and incentive bonus), regardless of whether or not Dr. Singh had initially contacted the acquirer or had subsequent contacts with the acquirer. (Compl. ¶ 54) (emphasis added).

- Section 3(f) of the draft Agreement provided that:

    In addition to the fees and expenses set forth in Sections 3(a) and (b), unless this Agreement is terminated by ZYCOS pursuant to Section 15(b), Professional will also be eligible to receive an Incentive Bonus, pursuant to the terms and conditions set forth on Exhibit 2, *in the event of a Sale Transaction or Strategic Partnership (in each case, as defined in Exhibit 2) that is consummated during the Term of this Agreement* or the twelve month period following the last day of the Term of this Agreement. (Compl. ¶ 78) (emphasis added).

4

- During summer 2004, Dr. Singh had several conversations with Daniel Green in which Daniel Green reaffirmed the commitment of Zycos to pay Dr. Singh an incentive bonus *in the event MGI Pharma acquired Zycos*[.]  (Compl. ¶ 103) (emphasis added).

- Dr. Singh supplied the services to Zycos with the expectation of receiving fair treatment and just recompense, including consulting fees and an incentive bonus *in the event of an acquisition of Zycos*.  (Compl. ¶ 146) (emphasis added).

- Zycos accepted Dr. Singh's services and used Dr. Singh in its marketing of itself for potential acquisition with the expectation of providing Dr. Singh fair treatment and just recompense, including consulting fees and an incentive bonus *in the event of an acquisition of Zycos*.  (Compl. ¶ 147) (emphasis added).

- Dr. Singh supplied the services to Zycos with the expectation of receiving fair treatment and just recompense, including consulting fees and an incentive bonus *in the event of an acquisition of Zycos*.  (Compl. ¶ 156) (emphasis added).

- Zycos accepted Dr. Singh's services with the expectation of providing Dr. Singh fair treatment and just recompense, including consulting fees and an incentive bonus *in the event of an acquisition of Zycos*.  (Compl. ¶ 157) (emphasis added).

- These assurances included statements made in summer 2004 by Daniel Green to Dr. Singh in which Daniel Green manifested the commitment of Zycos to pay Dr. Singh all incentive bonus *in the event MGI Pharma acquired Zycos*.  (Compl. ¶ 163) (emphasis added).

Thus, Plaintiff's insistence in his Response that this Court closely consider *all* of the allegations in his Complaint is ill-conceived, as those allegations are precisely what seals the case for why 259 § 7 is applicable here.  In essence, a close read of Plaintiff's Complaint will show that a ruling denying Pharma Biologics' Motion would not be *because* of the allegations pleaded on the face of Plaintiff's Complaint, but rather, *despite* them.

Further, Plaintiff's argument that all of his alleged services do not "fall within the ambit of the statute" is particularly disingenuous in this case, since he duly noted that it was his understanding that his incentive bonus would be "in consideration of the *overall services* he had provided throughout the process and the value his presence on the Zycos team had brought to the search or an acquirer."  (Compl. ¶ 34) (emphasis added).  Additionally, Plaintiff readily admits

that his very interest in helping Zycos was tied to the incentive bonus. (Compl. ¶ 28.) ("Dr. Singh was interested in helping Zycos particularly because, as a result of the Bayer transaction not being consummated in 2003, he had not received an incentive bonus despite putting significant effort into making that potential transaction a success.") It is clear then, that the "myriad [of] services" Plaintiff allegedly performed were done not only in consideration of, but with the goal of, collecting the incentive bonus, which was by Plaintiff's own admission (as shown above), triggered **only** by the sale of a business, namely, Zycos.

Thus, the parsing of duties that is encouraged in Plaintiff's Response is not only unfounded, but it blatantly disregards both the letter and the spirit of the law of the Massachusetts Statute of Frauds. For this Court to engage in such activity would, in opposition to well-established principles of statutory construction, render the entire statute meaningless, as to so find would suggest that one could circumvent 259 § 7 by fencing over every menial task that was performed by a broker or finder -- even though every task performed was in furtherance of, and with an eye toward, the sale of a business. Indeed, Plaintiff does not, and cannot, point to a single case to support his contention that *all* of the precise services he provided must fall within the meaning of "broker " or "finder." Instead, contrary to Plaintiff's Response, the statute and the analyses by various Massachusetts courts suggests that a "broker" or "finder" by any another name is still a broker/finder.

## II.   PLAINTIFF'S RESPONSE COMPLETELY MISCONSTRUES THE BASES FOR WHICH HIS IMPLIED-IN-FACT CLAIMS IS BARRED AT LAW

First, nowhere in Pharma Biologics' Motion does it argue, or even suggest, that alternative pleading is improper. It is axiomatic that a party may plead in the alternative. Fed. R. Civ. P. 8(e) (2005). However, pursuant to the Federal Rules of Civil Procedure, "*[a]ll statements* [in a pleading] shall be made subject to the obligations set forth in Rule 11." *Id.*

6

(emphasis added). Rule 11(b)(2) further mandates that when a party submits a pleading, he certifies that "the claims, defenses, and other legal contentions therein are *warranted by existing law* or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Civ. P. 11(b)(2) (2005). Taken together, Rules 8(e) and 11(b)(2) require that all claims, including those pleaded in the alternative, must be warranted by existing law. Here, the argument is not that Plaintiff is precluded from pleading in the alternative, but rather, that claims IV and V of his Complaint are barred under Massachusetts law. Thus, even if claims IV and V are rightly found to be alternatively pleaded, they would still not survive a determination that they are barred at law.

Moreover, Pharma Biologics also does not assert nor suggest that Plaintiff's quantum meruit claims are barred because they cannot co-exist where there is an express contract. *See* Pl.'s Resp. at 3. Rather, Pharma Biologics argues that because the express contract between Zycos and Plaintiff was for professional brokerage and/or finder services with respect to the sale of a business, the contract falls under the Massachusetts statute of frauds requiring that such contract be in writing and, thus, precluding *any* claim not based upon a writing. The law on this issue could not be more clear: where the Massachusetts brokerage statute governs, claims based on unjust enrichment or quantum meruit are barred, period. *See* Mass. Gen. Laws ch. 259, § 7; *see also Cantell*, 772 N.E.2d at 1082 n. 6 ("Because G.L. c. 259, § 7, applies to a contract implied in fact or in law, the statute also precludes recovery on *any* claim based on a contract implied in law, including recovery in quantum meruit.") (emphasis added).

As such, the cases cited in Plaintiff's Response, which are put forth only to support the conclusion that express contract and quantum meruit claims *can* coexist, miss the mark and are wholly irrelevant. *See* Pl.'s Resp. at 3 (citing *Uncle Henry's Inc. v. Plaut Consulting Co., Inc.*,

7

399 F.3d 33, 47 (1st Cir. 2005); *Bushkin*, 815 F.2d at 149. Plaintiff's misguided reliance on *Bushkin*, however, is especially compounded by the fact that it was decided prior to the effective date of 259 § 7. Indeed, a Massachusetts court has already explicitly stated that it is "clear that Bushkin's claims . . . *would not survive* if G.L.c. 259, § 7 were applicable." *Schwartz*, 1993 WL 818579 at *3 (emphasis added). The fact is that Plaintiff cannot cite to a single case to suggest that an implied-in-fact claim is viable under 259 § 7. Thus, here, Plaintiff's implied-in-fact claims are not barred *because* a writing exists, but precisely because they assume one does not.

For the reasons stated above and in Pharma Biologics' Motion, Pharma Biologics respectfully request that this Court enter an order granting *MGI Pharma Biologics' Motion to Dismiss Plaintiff's Counts IV and V of Plaintiff's Complaint* with prejudice.

Dated this 14th day of November, 2005.

Respectfully submitted,

_____
Donald R. Pinto, Jr.
RACKEMANN SAWYER & BREWSTER
One Financial Center
Boston, MA 02111
Tel: 617-951-1118
Fax: 617-542-7437

Andrew R. McGaan, P.C.
Jamenda A. McCoy
KIRKLAND & ELLIS LLP
200 East Randolph Drive
Chicago, IL 60601
Tel: 312-861-2000
Fax: 312-861-2200

*Counsel for Defendant*
*MGI Pharma Biologics, Inc.*

8